# EXHIBIT B

**AMERICAN ARBITRATION ASSOCIATION**

In the matter of the Arbitration between

AAA CASE NO. 01-22-0004-2216

ARNALDO L. MARTIN,

    Claimant,

v.

DORAL LINCOLN, LLC,

    Respondent.

_____/

**INTERIM AWARD**

    This arbitration action came to be heard before Caryn Canner Schwartz, THE UNDERSIGNED ARBITRATOR, for Final Evidentiary In-Person Hearing on December 5, 2023 (the "Final Hearing"). Claimant and Respondent were both represented by counsel. After hearing the testimony of the witnesses, reviewing all case filings by the parties, reviewing all the evidence presented, reviewing the authorities submitted by the parties, and the transcript of the Final Hearing, the Arbitrator finds in favor of Claimant, ARNALDO MARTIN, and against Respondent, DORAL LINCOLN, LLC, as a result of the Arbitrator's determination that Respondent, according to the testimony of Respondent's representative, did not maintain procedures reasonably adapted to avoid the error of the $100 overcharge in determining the purchase price of the Subject Vehicle, defined below. Therefore, Respondent is not protected from liability under 15 U.S.C. §1640(c). The Arbitrator makes the following findings of fact and interpretation of the law as applied to the facts in support of her ruling and hereby issues this INTERIM AWARD as follows:

**FINDINGS OF FACT AND LAW: GENERAL**

    1. On January 18, 2019, Claimant leased a 2019 Lincoln Nautilus bearing VIN: 2LMPJ6J94KBL30625 (the "Subject Vehicle") from Respondent via Lincoln Financial Services pursuant to the terms of the Motor Vehicle Lease Agreement (the "Lease Agreement" or the "Lease"). Claimant leased the Subject Vehicle under the Lease Agreement for a term of thirty-nine (39) months.

    2. Under the Lease Agreement, Claimant's first payment of $526.00 was due in January of 2019, followed by thirty-eight (38) payments of $526.00, each due on the 17th of the month. The Lease was due for termination on April 17, 2022. Claimant testified during the Final Hearing that he signed the four-page Lease Agreement.

3. Approximately two (2) months before the Lease terminated, Claimant contacted Lincoln Financial, inquiring about purchasing the Subject Vehicle. Lincoln Financial advised Claimant that it could not process a purchase of the Subject Vehicle directly and that Claimant would need to visit any Lincoln dealership to effectuate an early termination lease buyout. Thereafter, Claimant presented himself at Doral Lincoln to facilitate the early termination and lease buyout. When Claimant arrived at Respondent's dealership in February of 2022 to purchase the Subject Vehicle, he did not expect that the services to be provided by Respondent in purchasing the vehicle would be free. Once there, Respondent negotiated and prepared a bill of sale, more commonly known in the industry as a "VEHICLE BUYER'S ORDER," for Claimant to exercise his purchase option.

4. The Lease Agreement provides for the purchase of the Subject Vehicle prior to the end of the lease term, subject to certain fees that may be charged.

5. To exercise the purchase option in the lease, Respondent required Claimant to pay a cash price of $24,820.35, which was $100 more than was owed, an $898.50 "Predelivery Service Charge" and a $189.95 "Electronic Registration Filing Fee." Claimant testified at the Final Hearing, that he believed Respondent should be compensated "a reasonable cost, yes." Respondent admitted at the Final Hearing that the Claimant was overcharged by $100.00 for the vehicle purchase price due to a clerical error which resulted in a refund to Claimant shortly upon Doral Lincoln's realization of same. A refund check was issued July 14, 2023 in the amount of $100.00 to Claimant.

6. The Early Termination Provision of the Lease Agreement on page 1 of the Lease Agreement discloses in its own bold, blocked box with bold font, that the Claimant "may have to pay a substantial charge if [Claimant] end[s] this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier [Claimant] end[s] the lease, the greater this charge is likely to be."

7. The Lease Agreement also discloses in more detail the terms for the purchase of the Subject Vehicle prior to the end of the lease term. Specifically, the paragraph titled "Voluntary Early Termination and Purchase the Vehicle" which is found at ¶29 of the Lease Agreement, is controlling. Pursuant to the Voluntary Early Termination and Purchase the Vehicle provision, Claimant "may purchase the Vehicle from the Lessor or a party designated by Finance Company at any time if You are not in default. If You have a Monthly Payment Lease you must pay the following: (a) the Unpaid Adjusted Capitalized Cost, plus (b) the amount by which the lease end purchase option price (Item 10) exceeds the Residual Value (Item 7d) plus (c) official fees and

taxes, plus (d) all other amounts then due under the lease (except charges for excess wear and use and mileage). You may also be charged a reasonable documentary fee if allowed by law."

8. On October 5, 2022, Claimant filed his initial Demand and Statement of Claim. Claimant's Statement of Claim was subsequently amended on May 26, 2023, alleging Respondent's violation of the Consumer Leasing Act ("CLA") - 12 U.S.C. §1667, 1667a and its implementing regulations, 12 C.F.R. §1013 ("Regulation M") by failing to disclose in a clear and complete manner any additional fees and charges needed to exercise the early purchase option under the Lease Agreement.

9. Congress passed the CLA "as an amendment to the Truth in Lending Act...." *Cox v. Porsche Fin. Services, Inc.*, 342 F. Supp. 3d 1271, 1281 (S.D. Fla. 2018) *citing* 15 U.S.C. § 1601 *et seq.* ("TILA"). Its purpose is to "assure a meaningful disclosure" of lease terms so borrowers can "compare more readily the various lease terms available[,] ... enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisements." *Cox*, 342 F. Supp. 3d at 1281 *citing* 15 U.S.C. § 1601(b).

10. The CLA is a strict liability statute designed to protect borrowers. *Cox*, 342 F. Supp. 3d at 1281. Its provisions must be construed liberally and in favor of borrowers. *Id.* Full compliance with the CLA is required because "[e]ven minor violations of the Act cannot be ignored." *Cox*, 342 F. Supp. 3d at 1281 *quoting Clement v. Am. Honda Fin. Corp.*, 145 F. Supp. 2d 206, 210 (D. Conn. 2001). Thus, just "a single violation of the statutory requirements" can establish liability. *Cox*, 342 F. Supp. 3d at 1281. Additionally, "[a] proven violation of the disclosure requirements is presumed to injure the borrower by frustrating the purpose of permitting consumers to compare various available credit terms." *Herrera v. First Northern Sav. and Loan Ass'n*, 805 F.2d 896, 901 (10th Cir. 1986)(citing *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir. 1979)).

11. Claimant is a natural person who leased the Subject Vehicle primarily for personal, family, and household purposes. 15 U.S.C. § 1667(1)-(2). The CLA governs the disclosures in the lease because the lease term ran for 39 months and was for less than $58,300. 15 U.S.C. § 1667(1) and Comment for 12 CFR 1013.2(e). The Lease is governed by the disclosure requirements of 15 U.S.C. § 1667a and 12 C.F.R. § 1013.4. Respondent had to comply with the CLA's disclosure requirements because it was a "lessor" under the CLA. Respondent leased, offered, or arranged to lease vehicles more than five times in the preceding calendar year or more than five times in the current calendar year. 15 U.S.C. § 1667(3); Reg. M § 1013.2(h).

3

12. Under the CLA, federally-mandated disclosures must be given to consumers before the lease is consummated. Reg. M § 1013.3(a)(3). "Consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 1026.2(a)(13). *See Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1068 (11th Cir. 2004).

13. A "lessor" must "provide before consummation a dated…certain descriptions, amounts, and other disclosures." *Cox*, 342 F. Supp. 3d at 1281 *quoting* 15 U.S.C. § 1667a(2). These disclosures must be accurate, clear, conspicuous, and complete. 12 CFR § 1013.3(a).

14. Regulation M requires the lessor to disclose a "statement of whether or not the lessee has the option to purchase the leased property … and [i]f prior to the end of the lease term, the purchase price or the method for determining the price and when the lessee may exercise this option." 12 CFR § 1013.4(i)(2). The purchase option price must be disclosed as "either a sum certain or a sum certain to be determined at a future date by reference to a readily available independent source." 12 CFR § 1013.4(i)(2), Official Interpretations. And the disclosure must provide sufficient information so that the lessee will be able to determine the actual price when the option becomes available. Official Interpretations § 1013.4(i)-5.

15. A lessor, such as the Respondent, is entitled to a limited carve-out to the CLA's strict liability based upon a bona fide error affirmative defense. The defense is set forth in 15 U.S.C. § 1640(c).

## FINDINGS OF FACT: THE DOCUMENTARY FEE

16. Claimant was charged $898.50 as a Predelivery Service Charge and $189.95 as an Electronic Registration Filing Fee as set forth in the Vehicle Buyer's Order.

17. Mr. Kussell's testimony in the Final Hearing established that the automotive industry interchangeably uses the term "documentary fee" and "pre-delivery service fee".

18. As detailed on page 2 of the Vehicle Buyer's Order, the Documentary Fees - titled "Predelivery Service Fees" are comprised of the "Predelivery Service Charge" and "Electronic Registration Filing Fee". It is disclosed in bold type at the bottom of page 2 that "These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale".

19. The disclosure on page 1 of the Lease Agreement informed the Claimant that he "may have to pay to pay a substantial charge if [Claimant] ends this lease early" and that he "…may be charged a reasonable documentary fee if allowed by law." Paragraph 29 of the Lease Agreement, entitled, "Voluntary Early Termination and Purchase the Vehicle", states that "You may purchase the Vehicle from the Lessor or a party

4

designated by Finance Company at any time if You are not in default. If You have a Monthly Payment Lease you must pay the following: (a) the Unpaid Adjusted Capitalized Cost, plus (b) the amount by which the lease end purchase option price (Item 10) exceeds the Residual Value (Item 7d) plus (c) official fees and taxes, plus (d) all other amounts then due under the lease (except charges for excess wear and use and mileage). You may also be charged a reasonable documentary fee if allowed by law."

20. Claimant admitted in the Final Hearing that he triggered the Lease Agreement's provision for Voluntary Early Termination and Purchase of the Vehicle when he elected to terminate his lease two months early and purchase the Subject Vehicle. The Documentary Fees in question were charged as part of the February 2022 purchase of the Subject Vehicle following Claimant's early termination of the Lease Agreement.

### FINDINGS OF FACT: THE CLERICAL ERROR

21. On February 9, 2022, the Claimant was charged the vehicle purchase price of $24,820.35 as reflected in the Vehicle Buyer's Order.

22. Respondent admits that the Claimant was overcharged by $100.00 for the vehicle purchase price due to a clerical error.

23. The uncontroverted testimony from Mr. Bobby Kussell, the chief financial officer of Respondent, at the Final Hearing established that the $100.00 overcharge was a clerical error which resulted in a refund to Claimant shortly upon Doral Lincoln's realization of same. A refund check was issued July 14, 2023 in the amount of $100.00 to Claimant.

24. The Arbitrator notes that Claimant did not realize the clerical error until approximately May 26, 2023 when Claimant filed his Amended Statement of Claim and Respondent did not realize the $100.00 clerical error until Respondent, upon reviewing Claimant's Amended Statement of Claim, noted the error and issued the refund check. The Arbitrator also notes that the $100.00 clerical error was neither referenced in Claimant's original federal filing, nor in his initial Statement of Claim. *However,* the Arbitrator finds the facts in this Paragraph 20 are not relevant for considering whether Respondent is or is not liable under 15 U.S.C. § 1640(c).

25. Although Mr. Kussell testified at the Final Hearing that Respondent maintains checklists and policies related to reviewing the terms of an early termination lease buyout to ensure accuracy and compliance, he also testified that despite policies and procedures in place, the $100.00 clerical error was the first of its kind and subsequent policies and procedures have been incorporated to prevent this type of clerical error from occurring again. *Of great significance,* Mr. Kussell testified at the Final Hearing that Respondent had no policies or

5

procedures in place at the time of Mr. Martin's purchase transaction to verify whether the amount he was being charged was accurate.

## CONCLUSIONS OF LAW: THE DOCUMENTARY FEE

This Arbitrator finds Respondent's disclosures regarding the fees or charges that may be incurred upon a voluntary early termination of the lease and subsequent purchase of the vehicle to be accurate, clear, conspicuous, and complete. The CLA and its implementing regulations require the following disclosures related to Claimant's allegations:

> 12 C.F.R. §1013.3(a) **General requirements**, states in pertinent part:
>
>> A lessor shall make the disclosures required by §1013.4, as applicable. The disclosures shall be made clearly and conspicuously in writing in a form the consumer may keep, in accordance with this section.
>
> 12 C.F.R. § 1013.4 **Content of disclosures**, states in pertinent part:
>
>> For any consumer lease subject to this part, the lessor shall disclose the following information, as applicable:
>
>> 12 C.F.R. §1013.4(i) **Purchase option,** states in pertinent part:
>> A statement of whether or not the lessee has the option to purchase the leased property, and:
>
>> (1) **End of lease term**. If at the end of the lease term, the purchase price; and
>> (2) **During lease term**. If prior to the end of the lease term, the purchase price or the method of determining the price and when the lessee may exercise this option.
>
>> In the Comment for 1013.4, Paragraph 4(i)5 states, in pertinent part, **Purchase-option price**. Lessors must disclose the purchase-option price as a sum certain or as a sum certain to be determined at a future date by reference to a readily available independent source. The reference should provide sufficient information so that the lessee will be able to determine the actual price when the option becomes available. . . .

The Arbitrator finds that Respondent complied with the requirements of 12 C.F.R. §1013.3(a), 1013.4 and 1013.4(i). The CLA requires that each lessor to a consumer lease provide before consummation a dated, written statement that accurately and in a "clear and conspicuous manner" sets out certain descriptions, amounts, and other disclosures. *Cox v. Porsche Financial Services, Inc.*, 342 F.Supp.3d 1271, 1281 (S.D. Fla.

6

October 19, 2018) (citing 15 U.S.C. § 1667a(2)). "Clear and conspicuous" requires that the disclosures be "readily understandable." *Id.* (citing Official Staff Commentary to Regulation M, 12 C.F.R. § 1013). 1013.4 (i) and Comment 1013.4 - Content of Disclosures 4(i)5.

Claimant has alleged in his Amended Statement of Claim that Respondent's failure to accurately and completely disclose the imposition of additional fees and charges in the Lease Agreement upon the early termination of the lease was material to Claimant's decision to enter into the Lease Agreement and in violation of the CLA. However, Claimant's own testimony during the Final Hearing on December 5, 2023 contradicts this position.

> Q: You testified earlier that when you leased the vehicle you had no intention of buying it at the end of the lease; is that correct?
> A: It is correct. When I did the lease, no.
> Q: So would the early termination provision of the lease been important to you when you signed the lease?
> A: No. At that moment, it was not.

This Arbitrator finds that Claimant provided inconsistent testimony at the Final Hearing regarding his review and understanding of the terms and conditions of the Lease Agreement, *however,* whether Claimant read and understood the terms of the Lease Agreement is immaterial to this Arbitration and the ultimate determination of whether Respondent properly disclosed the purchase option to the Claimant. The undisputed evidence at the Final Hearing shows (1) that the written Lease Agreement clearly and conspicuously notified Claimant of the option to purchase the Subject Vehicle at the end of the lease term, and (2) the purchase price if the full lease term was fulfilled:

> 10. **Purchase Option at End of Lease Term.** $23,723.75, plus official fees and taxes, and a reasonable documentary fee if allowed by law, is Your lease end purchase option price.

Additionally, the Lease Agreement stated in clear bolded lettering that there may be additional fees and charges if the lease is terminated early before the expiration of the lease term:

> *Early Termination. You may have to pay a substantial charge if You end this lease early. The charge may be up to several thousand dollars.* The actual charge will depend on when the lease is terminated. The earlier You end the lease, the greater this charge is likely to be.

The Arbitrator notes that the Early Termination language found on page 1 of Respondent's Lease Agreement is verbatim from the model form language found at 12 CFR 1013.4(g) titled "Early Termination".

7

¶ 29 of The Lease Agreement provides in more detail the terms of a voluntary early termination and purchase of the Subject Vehicle:

> You may purchase the Vehicle from the Lessor of a party designated by Finance Company at any time if You are not in default. If You have a <u>Monthly Payment Lease</u>, you must pay the following: (a) the Unpaid Adjusted Capitalized Cost, plus (b) the amount by which the lease end purchase option price exceeds the Residual Value plus (c) official fees and taxes, plus (d) all other amounts then due under the lease. You may also be charged a reasonable documentary fee if allowed by law.

This Arbitrator finds that the disclosure of the purchase option was accurate, clear, conspicuous and complete. Moreover, ¶10 of the Lease Agreement provided Claimant with a sum certain for purchasing the Subject Vehicle at the end of the lease term and ¶ 29 of the Lease Agreement provided additional disclosures and the method for determining the purchase price if Claimant exercised his early termination and purchase option.

Claimant argues that the Documentary Fees, consisting of the Predelivery Service Charge of $898.50 and the Electronic Registration Filing Fee of $189.95, were not properly disclosed to him in the Lease Agreement. The Lease Agreement states in multiple locations that additional fees and taxes, including a reasonable documentary fee, may be charged. These disclosures follow the Consumer Financial Protection Bureau's model form, including the disclosure that substantial charges may be imposed if Claimant elected to terminate his lease early. See 12 C.F.R. § 1013, Appendix A-2.

Claimant's argument that the fees imposed on him because of an early termination of the lease in violation of the CLA is unpersuasive. The CLA requires Respondent to disclose the purchase price inclusive of all fees and charges within the Lease Agreement at the time the parties entered into it, or alternatively, the method of determining the purchase price. This is what Respondent has done. Paragraph 29 of the Lease Agreement states in detail the method of determining the purchase price upon an early termination of the lease by adding the sums of "(a) the Unpaid Adjusted Capitalized Cost, plus (b) the amount by which the lease end purchase option price exceeds the Residual Value, plus (c) official fees and taxes, plus (d) all other amounts then due under the lease." The Lease Agreement goes on to advise that Claimant "…may also be charged a reasonable documentary fee if allowed by law." While Claimant may desire that the entire purchase price be disclosed in the event of an early termination of the lease and subsequent purchase of the vehicle, the CLA does not require such disclosures. As explained by Mr. Kussell in the Final Hearing:

8

> A: So I think, in every case on the lease…the fees may be different or the amount, you know. So you know…if it's an early termination and it's six months early, five months early, four months early, in all those cases, the amount and fees may be different.
> Q: And also for the – an early purchase, correct?
> A: So the early purchase amount is not disclosed because as I said, the amount's gonna vary based on is it six months, five months, four months, or three months.

Mr. Kussell clarified that the inclusion of the formula to determine the purchase price of an early terminated lease agreement is because too many variables make determining a sum certain impractical.

> THE COURT: Well, I'm asking – one of the questions was, is there any way to ascertain that at the inception of lease as a sum certain?
> A: There's, there's not because you'll have to – it's a day-by-day schedule, so if you terminate 60 days early, it's one amount. 61 days early is a different amount because there's additional interest there. You know, and then there's also if you've missed payments of course – over the course of time, potentially have late charges. So you could never ever give a sum certain amount until at the end of the lease and assuming that all the payments are current. Even at the – at the lease end value, the assumption there is that all payments are current on the lease. If you're behind one or two payments, then that's not a sum certain because you haven't made all of your payments.

For the reasons stated above, this Arbitrator has determined that Respondent has accurately, clearly, conspicuously and completely disclosed the purchase price, or alternatively, the formula used to determine the purchase price, of the Subject Vehicle upon the early termination of the lease.

### **CONCLUSIONS OF LAW: THE CLERICAL ERROR**

A lessor, such as the Respondent, is entitled to a limited carve-out to the CLA's strict liability based upon a bona fide error affirmative defense. The defense is set forth in 15 U.S.C. § 1640(c) which provides:

> A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

9

To avail itself of the bona fide error affirmative defense, under 15 U.S.C. §1640(c) Unintentional Violations; Bona Fide Errors, Respondent must prove: (1) its error was unintentional; (2) the error must have been the type of error falling within the statutory notion of bona fide error; and (3) the creditor must have been maintaining procedures reasonably adapted to avoid the error. *Hutchings v. Beneficial Fin. Co. of Or.*, 646 F.2d 389, 391 (9th Cir. 1981) ("The Act…provides creditors with a defense for clerical errors. The issue is whether [the creditor] maintained 'procedures reasonably adapted to avoid any such error'.") (citing § 1640(c) and *Ives v. W.T. Grant Co.*, 522 F.2d 749, 757 (2d Cir. 1975)). The bona fide error defense requires an "extra step," something more than just carefully delegating responsibility. Congress required more than just the maintenance of procedures which were designed to avoid and prevent the errors which might slip through procedures aimed at good faith compliance. This means that the procedures which Congress had in mind were to contain an extra preventative step, a safety catch or a rechecking mechanism. *Mirabal v. Gen. Motors Acceptance Corp.*, 537 F.2d 878-79 (7th Cir, 1976), overruled on other grounds by *Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608 (7th Cir. 1982).

The evidence shows that neither Claimant nor Respondent were aware that an extra $100.00 was charged to Claimant for the purchase of the Subject Vehicle upon Claimant's early termination of his lease. Claimant did not include any allegations regarding this overcharge in his original Statement of Claim filed October 5, 2022. Testimony at the Final Hearing from Mr. Bobby Kussell, the corporate representative and Chief Financial Officer of Respondent, established that upon receiving and reviewing Claimant's Statement of Claim, Respondent noted the $100.00 clerical error and promptly issued a $100.00 refund check to Claimant. Mr. Kussell's testimony demonstrates that Respondent's violation of the CLA with respect to the $100.00 overcharge was not intentional.

Therefore, this Arbitrator finds that Respondent satisfied, by a preponderance of evidence, that the violation was unintentional and was a bona fide error.

Mr. Kussell testified that certain checklists and procedures were in place to verify the accuracy of the terms of any transaction with Respondent's customers, including a review by the finance manager, the compliance department, and a billing associate prior to finalizing the deal to Respondent's general ledger and account. Upon learning of the $100 overcharge, Respondent revised and incorporated further policies and checklists to their procedures to prevent such errors in the future. Mr. Kussell could not explain exactly why Mr. Martin was charged $100 more than the purchase price in the lease, but advised that the finance manager may have played a role in the error.

*However,* Mr. Kussell testified at the Final Hearing that Respondent had no policies or procedures in place at the time of Mr. Martin's purchase transaction to verify whether the amount he was being charged was accurate. Mr. Kussell provided the following response at the Final Hearing to Claimant's attorney's question:

Q. So it's fair to say that Doral at that point in time had no policies and procedures in place to verify whether the amounts -- whether the amount that Mr. Martin was charged was accurate. Is that correct?
A. It's correct. This is the first instance we've seen of that. We've not had any prior issues. And as I said, once we saw that was an issue we incorporated into our current policies and controls.

Here, it is clear that Respondent had no policies or procedures to protect consumers like Claimant. The burden of proving error-preventing procedures is on the lessor raising the defense of bona fide error. *Teel v. Thorp. Credit Inc. of Illinois*, 609 F.2d 1268, 1270 (7th Cir. 1979).

In *Teel*, the defendant, Thorp Credit Inc. of Illinois, appeals from a lower court judgment finding Thorp in violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. The issue presented by this appeal is whether the lower court was correct in concluding that Thorp did not maintain loan procedures adequate to satisfy the bona fide error defense provided in section 1640(c) of the Act. The district court conducted a bench trial and concluded that, although Thorp's error was clerical and unintentional, the violation of the Act was not excused. We affirm. . . . .

To meet its burden the lessor must offer specific evidence of adequate procedures; blanket allegations that such procedures existed are insufficient. *See Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246 (3d Cir. 1980); *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407 (7th Cir. 1980); *Oas v. Rama Capital Partners, L.L.C.*, 2020 WL 7089828, at *6 (C.D. Cal. Nov. 3, 2020).

For procedures to be adequate, they must be directed to preventing the error and not correcting the error once it has occurred. *Gallegos v. Stokes*, 593 F.2d 372 (10th Cir. 1979); *Mirabal v. GMAC*, 537 F.2d 871 (7th Cir. 1976). *See also Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006) (rejecting bona fide error defense where creditor did not show that it had any procedures for preventing mix-up of rescission forms); *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246 (3d Cir. 1980). The *Thomka* court states, in pertinent part:

Even if AZ prevailed on this point [Arbitrator clarifies as meaning a clerical error], it cannot meet the second part of the requirement that it demonstrate by a preponderance of the evidence that the error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The requirement has been construed strictly by the courts to require that a special system be established to assure that no initial errors occur, and that a checking mechanism be maintained to catch any errors that slip through the system.

This Arbitrator notes that the CLA is a strict liability remedial statute designed to protect borrowers that must be interpreted and applied to provide the broadest relief affordable to consumers. *See Cox*, 342 F. Supp. 3d at 1281. The goal of TILA (Truth in Lending Act) requires that even minor statutory and regulatory strictures be followed by all creditors to the smallest detail. *Pennino v. Morris Kirschman & Co., Inc.*, 526 F.2d 367 (5th Cir. 1976).

Moreover, "once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Barlow v. Evans*, 992 F. Supp. 1299, 1307 (M.D. Ala. 1997) *citing Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976).

This Arbitrator therefore finds that Respondent has not demonstrated, by a preponderance of the evidence, that the error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error" and therefore cannot avail itself of the Bona fide Error Defense in 15 U.S.C. §1640(c). Accordingly, Respondent is in violation of the CLA.

## CONCLUSION

Based upon the findings above, the Arbitration Orders and Adjudges as follows:

Claimant's request for an Interim Award in its favor and against Respondent is Granted for the reasons stated above. Because the CLA is a strict liability statute, regardless of whether Respondent knowingly violated the CLA, it is clear, based on the factual representations of both parties, and the evidence presented before this Arbitrator, that Respondent is liable for damages to the Claimant in the amount of **$100 for actual damages (which has already been paid by Respondent to Claimant), $2,000.00 for statutory damages** allowable under 15 USC § 1640(a)(2)(A), and **attorneys' fees and costs**. The parties have consented to the jurisdiction of the Arbitrator to adjudicate entitlement to attorney's fees and costs at a future date.

This Interim Award is in full settlement of the merits of all claims submitted to this Arbitration, except for the determination of reasonable attorney fees and costs in favor of Arnaldo Martin, the prevailing party. The Arbitrator retains jurisdiction to address Respondent's claims for reasonable attorney fees and costs. The procedure for required documents to be submitted, dates of submission regarding attorneys' fees and costs by the parties, submission of proposed orders for attorneys' fees and costs and the date by which the Arbitrator must rule on the amount of attorneys' fees and costs to which Arnaldo Martin is entitled, shall be discussed at

second supplementary telephonic scheduling conference in this matter which has been set for January 10, 2024 at 12:00 noon after which a third supplementary Scheduling Order will be prepared by the Arbitrator. Upon and after such submissions, the matter shall be deemed submitted to the Arbitrator for determination in a Final Award.

This Interim Award shall remain in full force and effect until the Arbitrator renders a Final Award.

DONE and ORDERED January __9__, 2024.

_____
Hon. Caryn Canner Schwartz
Arbitrator